# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

EDWARD W.,

     *Plaintiff,*

v.

                    Case No. 1:24-cv-01190-RLH

FRANK BISIGNANO, Commissioner of
Social Security,

     *Defendant.*

## ORDER & OPINION

Twelve years ago, Plaintiff Edward W. applied to the Social Security Administration for supplemental security income. In the years since, he has undergone several rounds of denials, hearings, and an appeal to this Court, which remanded his case to the administration in 2020. On remand, an administrative law judge issued a lengthy written opinion finding, for the second time, that Edward was not disabled and thus not eligible for benefits. Edward's suit challenges that opinion. It also challenges the Appeals Council's decision not to review it. The parties have consented to the final disposition of this case by a U.S. Magistrate Judge under 28 U.S.C. § 636(c)(1). (*See* Doc. 10.) For the reasons explained below, the Court finds that the ALJ's opinion was supported by substantial evidence and declines Edward's invitation to second guess the Appeals Council's decision. The Court thus affirms.

# LEGAL STANDARD

## I.    The Social Security Act

The Social Security Act—and the regulations adopted under it—explain in detail who is eligible to receive social security benefits. To qualify, a claimant must be sixty-five years of age, blind, or disabled. 20 C.F.R. § 416.202(a)(1)–(3). A claimant is disabled if she cannot "do any substantial gainful activity" because she suffers from "any medically determinable physical or mental impairment" that is either life-threatening or chronic. 42 U.S.C. § 423(d)(1)(A).

To implement that definition, the Social Security Administration has developed a five-step evaluation process. *See* 20 C.F.R. § 416.920(a)(1). The steps proceed sequentially:

> **Step One.** Is the claimant currently engaged in substantial gainful activity?
>
> **Step Two.** Does the claimant have a severe mental or physical impairment—i.e., an impairment that significantly limits their ability to do basic work activities—or a combination of them?
>
> **Step Three.** Does the mental or physical impairment appear on an enumerated list (called "listings")? If not, is it nonetheless medically equal to one of those listings?
>
> **RFC Assessment.** What is the claimant's residual functional capacity (RFC)—that is, the most they can still do despite their limitations?
>
> **Step Four.** Based on the claimant's RFC, can they perform their past work?
>
> **Step Five.** Based on the claimant's RFC, can they perform other work?

*See id.* § 416.920(a)(4)(i)–(v). The ALJ begins, of course, at step one. If it yields an affirmative answer (i.e., the claimant is working), the claimant is not disabled, and

the inquiry ends. If step two yields a negative answer (i.e., the claimant does not have a severe impairment), the claimant is not disabled, and the inquiry ends. *See id.* §416.920(a)(4)(i)–(ii). Step three, however, is dispositive: If the claimant's impairment appears on a listing, the claimant is considered disabled and eligible for benefits. *See id.* § 416.920(a)(4)(iii). If the claimant's impairment does not appear on or medically equal a listing, the ALJ crafts an "RFC Assessment," which analyzes "the claimant's ability to do physical and mental work activities on a regular and continuing basis despite limitations from [their] impairment." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). If either steps four or five yield an affirmative answer (i.e., the claimant can perform their old job or adjust to a new one in light of the RFC), the claimant is not disabled. *See* 20 C.F.R. § 416.920(a)(4)(iv)–(v).

## II.    Standard of Review

A court's function on review is limited to determining whether the ALJ's findings are supported by substantial evidence and based upon proper legal criteria. *See Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Courts may not try the case de novo or supplant the ALJ's factual findings with their own. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). Instead, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence, in turn, is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (explaining that the threshold "is not high"); *Schneck v. Barnhart*, 357

3

F.3d 697, 699 (7th Cir. 2004) ("Substantial evidence may be less than the weight of the evidence, and more than a scintilla." (citation modified)). And although the ALJ's decision commands deference, courts may not simply "rubber stamp" it. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002).

## BACKGROUND

### I.  Edward

Edward was born in 1967, (R. at 8[1]), and has received a high school education. (R. at 210). He has worked as a cleaner at a foundry, at a furniture store, as a technician at a tire company, and as a yard worker at a building supply center. (R. at 210.) Edward contends that he is unable to work because of his physical impairments, which include problems with his spine, neck, and right shoulder. (Pl. Br. 2–4.[2])

### II.  Procedural History

This is the second time Edward's case has been to this Court. He originally applied for disability benefits in 2014. (Pl. Br. 1.) When his claim was denied, he sought review before an ALJ, who affirmed the denial. (Pl. Br. 1.) After the Appeals Council declined to review his case, Edward appealed to this Court, which reversed and remanded the Commissioner's decision in 2020. (Pl. Br. 2.) Meanwhile, Edward had filed a separate claim for benefits, which was consolidated on remand. (Pl. Br. 2.) The ALJ held two additional hearings before issuing a second decision, concluding again that Edward was not disabled. (Pl. Br. 2.) Edward sought review with the

---

[1] "R." refers to the Certified Administrative Record filed on July 22, 2024. (Docs. 5–8.) The Record was filed across three separate docket entries. For purposes of consistency, the page numbers refer to the black page numbers at the bottom right of the transcript, rather than the green page numbers generated automatically by CM/ECF at the top right of the page.

[2] "Pl. Br." refers to Edward's brief, filed September 20, 2024. (Doc. 13.)

Appeals Council a second time and submitted additional evidence, but his request was denied in March 2024. (Pl. Br. 2.) Two months later, Edward filed a complaint in this Court challenging the ALJ's decision. (Doc. 1.) Edward filed his opening brief, (Doc. 13), the Commissioner responded, (Doc. 17), and Edward replied, (Doc. 18.)

## III.  The ALJ's Decision

In his opinion, the ALJ used the five-step evaluation process outlined above to determine whether Edward was disabled. At step one, he determined that Edward has not engaged "in substantial gainful activity" from his application date of September 16, 2014. (R. at 1592.) At step two, the ALJ found that Edward had the following severe impairments: (1) "cervical, thoracic, and lumbar spine disorders post cervical fusion"; (2) "arthritis of the hips and knees post right knee arthroscopic surgery and left total knee replacement"; (3) "degenerative right shoulder post surgery"; and (4) asthma. (R. at 1592.) At step three, the ALJ concluded that none of those impairments met or medically equaled any of the listed impairments. (*See* R. at 1605–07.) Before proceeding to steps four and five, the ALJ crafted an RFC assessment that, as relevant here, limited Edward to "sit[ting] six hours of an 8-hour workday" and "walk[ing] and/or stand[ing] 4 hours of an 8-hour workday." (R. at 1607–08.) At step four, the ALJ found that Edward does not have any past relevant work, making it impossible to determine whether Edward's RFC allowed him to perform it. (R. at 1650.) Finally, at step five, the ALJ determined that—given Edward's age, education, work experience, and RFC—there exist a significant number of jobs in the national economy that Edward would be able to perform. (R. at

1650.) Examples of those jobs included "office helper" and "mail clerk." (R. at 1651.) Based on the ALJ's conclusion at step five, he determined that Edward "has not been under a disability, as defined in the Social Security Act, since September 16, 2014, the date the application was filed." (R. at 1652.)

## DISCUSSION

Edward offers two reasons to reverse the Commissioner's decision. First, he argues that the ALJ failed to evaluate the opinion of a consultative examiner regarding his capacity to sit, stand, and walk over the course of a typical workday. The Court agrees, but finds that the ALJ's error was harmless because his reasons for rejecting that opinion were clear. Second, Edward argues that the Appeals Council erred in declining to review Edward's case. But that determination is unreviewable, so this Court is powerless to overturn it.

## I.    The ALJ's Treatment of Dr. Shobande's Opinion

Dr. Olatokunbo Shobande, at the behest of the Social Security Administration, examined Edward in early January 2020. (R. at 4516.) *See also Jones v. Dudek*, 134 F.4th 991, 994 (7th Cir. 2025) (explaining role of consultative examiners). After the exam, Dr. Shobande recorded his opinions of Edward's physical limitations along several dimensions—e.g., lifting and carrying, sitting and standing, and using his limbs. (*See* R. at 4524–29.) Among his findings (and as relevant here), Dr. Shobande concluded that Edward (1) could sit for four hours per day; (2) could stand for three hours per day; and (3) could walk for two hours per day. (R. at 4525.) But the ALJ did not adopt those conclusions. Instead, he found that Edward (1) could sit for *six* hours per day; and (2) could stand and walk for *four* hours per day—all increases over Dr.

6

Shobande's figures. Edward argues that the ALJ failed to adequately contend with Dr. Shobande's opinion about Edward's ability to sit, walk, and stand. (Pl. Br. 9.) The Commissioner concedes that the ALJ did not expressly analyze those portions of Dr. Shobande's opinion, but argues that the ALJ was entitled to—and in fact did— implicitly reject them. (Comm'r Br. 5.[3])

As explained below, the Court finds that the ALJ erred by not explicitly rejecting Dr. Shobande's proposed sitting, walking, and standing restrictions. But because the ALJ's reasons for doing so are clear, and because the Court is confident that he would arrive at the same conclusion on remand, this error was harmless.

## A.    The ALJ Erred by Not Explaining His Reasons for Rejecting Dr. Shobande's Opinion

Edward's argument turns on how ALJs are expected to treat a consultative examiner's opinion. The question, it turns out, is easier to ask than to answer. To start, no one disputes that ALJs must "evaluate every medical opinion" they receive. 20 C.F.R. § 404.1257(c). Of course, they need not accept those opinions without question. *See id.* § 404.1527(d). But when they reject an opinion, they "must provide enough analysis to allow a reviewing court some idea of why" they did so. *Spicher v. Berryhill*, 898 F.3d 754, 758 (7th Cir. 2018). For that reason, courts have reversed an ALJ for "not considering" a consultative examiner's opinion that the claimant had certain physical limitations. *Huber v. Berryhill*, 732 F. App'x 451, 455 (7th Cir. 2018). Although the Commissioner is correct to say that "ALJs need not comment on every line of a physician's treatment notes," (Comm'r Br. 5 (quoting *Kolar v. Berryhill*, 695

---

[3] "Comm'r Br." refers to the Commissioner's brief, filed December 12, 2024. (Doc. 17.)

F. App'x 161, 161–62 (7th Cir. 2017))), they must, at a minimum, "respond to the physician's principal conclusions." *Kolar*, 695 F. App'x at 162. By the same token, ALJs are often faced with conflicting medical opinions—as the ALJ here was. In that case, the ALJ must "evaluate[] the evidence" and justify why they are according more weight to one opinion over another. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004); *see also Colson v. Colvin*, 120 F. Supp. 3d 778, 793 (N.D. Ill. 2015).

Here, the ALJ's discussion of Dr. Shobande's opinion largely focused on Edward's lifting and carrying abilities and cane use, rather than his sitting, standing, and walking restrictions. The ALJ began his discussion by summarizing each of the proposed restrictions contained in Dr. Shobande's opinion medical source statement. (R. at 1643.) He then cited Dr. Shobande's opinion that Edward could "frequently lift and carry up to fifty pounds and occasionally up to one hundred pounds," characterizing those figures as "impractical and arguably unsafe." (R. at 1644.) The ALJ found the opinion puzzling because Dr. Shobande also indicated that Edward needed a cane, meaning that Edward would "have to carry up to 100 lbs. with only one hand"—a conclusion the ALJ found "nonsensical." (R. at 1644.) Citing the regulations, the ALJ disagreed that Dr. Shobande's opinion, taken at face value, precluded Edward from performing light work. (R. at 1644 (quoting Social Security Ruling 83-10).) From there, the ALJ launched into a thorough discussion of the evidence concerning Edward's cane use, ultimately concluding that an assistive device is not medically necessary. (*See* R. at 1644–46.)

Edward challenges not what the ALJ did say, but what his discussion excluded.[4] To this end, he argues that the ALJ did not squarely confront Dr. Shobande's opinion that Edward could only—over the course of an eight hour workday—sit for four hours, stand for three, and walk for two. (Pl. Br. 9.) In other words, the ALJ only discussed Dr. Shobande's opinion in the context of whether his proposed limitations placed Edward in the "light" or "sedentary" category of work; he did not discuss whether Edward *in fact* had those limitations. The Commissioner concedes that "the ALJ did not spell out how much weight he accorded Dr. Shobande's opinion about [Edward's] standing, walking, and sitting abilities." (Comm'r Br. 5.)

The ALJ's failure to do so was error. *See, e.g.*, *Vanprooyen v. Berryhill*, 864 F.3d 567, 572 (7th Cir. 2017) (finding an ALJ erred when they "failed to mention" a medical opinion); *Rhonda B. v. Saul*, No. 1:19-cv-2757, 2020 WL 1933626, at *8 (S.D. Ind. Apr. 22, 2020) (same where the ALJ "did not address . . . particular observations of the consultative examiner"). As discussed, an ALJ must consider the limitations contained in the opinions of a consultative examiner, *see Huber*, 732 F. App'x at 455, and confront their "principal conclusions." *Kolar*, 695 F. App'x at 162 Here, Dr. Shobande's "principal conclusions" were Edward's capacity to stand, walk, and sit. The ALJ was therefore required to address them directly, but did not.

---

[4] In Edward's brief, he insists that the question whether Dr. Shobande's restrictions would place him in the light or sedentary category of work is "not the issue here." (Pl. Br. 10.) The Court agrees. Accordingly, the Court sees no reason to discuss whether the restrictions set forth in the medical source statement lead ineluctably to one category of work or another.

**B.    The Error Was Harmless**

That said, not all errors are made equal. When a court finds that an ALJ's opinion falls short in some way, the question becomes whether the "failure constitutes a legal error requiring reversal." *Karr v. Saul*, 989 F.3d 508, 512 (7th Cir. 2021). Here it does not. Although the ALJ did not explicitly discuss Dr. Shobande's findings, his opinion as a whole provides "some idea of why"—indeed, a *clear view* of why—he rejected them. *Spicher v. Berryhill*, 898 F.3d 754, 758 (7th Cir. 2018). The Court can ascertain at least three reasons.

First, it is evident that the ALJ afforded near-controlling weight to the opinion of Dr. Ronald Kendrick, a board-certified orthopedic surgeon who examined Edward and testified at the hearing as an impartial medical expert.[5] (R. at 1647.) Among other things, Dr. Kendrick opined that Edward could (1) sit for six hours per day, and (2) stand and walk for four hours. (R. at 1647.) The ALJ adopted this opinion for two reasons: (1) Dr. Kendrick's credentials made him "well qualified to offer an opinion on the functional impact of [Edward's] multiple severe orthopedic/musculoskeletal impairments"; and (2) "Dr. Kendrick is the only medical professional who has reviewed all the medical records in this case." (R. at 1648.) Because the regulations identify both criteria as relevant to the evaluation of medical opinions, the ALJ was entitled to credit Dr. Kendrick's opinion. *See* 20 C.F.R. § 404.1520c (explaining that the objective medical evidence on which an opinion is grounded, as well as a physician's credentials, are factors to consider in weighing medical opinions). And Dr.

---

[5] As the Commissioner observes, Edward does not challenge the ALJ's discussion of Dr. Kendrick's testimony.

Kendrick's and Dr. Shobande's opinions were mutually exclusive—that is, Dr. Kendrick believed that Edward could sit, stand, and walk for longer than did Dr. Shobande. It is thus apparent that the ALJ's rejection of Dr. Shobande's opinion was contingent on the fact that Dr. Kendrick's was more persuasive. As courts have explained, and as Edward correctly recognizes, ALJs must "decide which doctor to believe." (Pl. Br. 7–8 (citing *Sedrak v. Callahan*, 987 F. Supp. 1063, 1067 (N.D. Ill. 1997).) The ALJ here decided to believe Dr. Kendrick, and he thoroughly explained his reasons for doing so. *See Colson*, 120 F. Supp. 3d at 793 (explaining that ALJ was entitled to resolve conflicting medical opinions by adopting one over the other).

Second, the ALJ devoted a considerable portion of his discussion to identifying the internal inconsistencies in Dr. Shobande's opinion. Indeed, Dr. Shobande's conclusion that Edward could lift and carry fifty-one to one hundred pounds, (R. at 4524), was, as the ALJ observed, patently incommensurate with the conclusion that Edward also needed a cane, (*see* R. at 1644). As the Seventh Circuit has held, "[m]edical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence" in the record. *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995). The ALJ was entitled to reject the opinion on this ground.

Third, in discussing another portion of Dr. Shobande's opinion (Edward's use of a cane), the ALJ observed that "Dr. Shobande did not identify the particular medical or clinical findings which supported his assessment and limitations . . . as the form directed him to do." (R. at 1646.) This is confirmed by page two of Dr. Shobande's medical source statement: He left blank the portion of the form that asked

him to "[i]dentify the particular medical or clinical findings . . . which support your assessment." (R. at 4525.) Again, the supportability of an opinion—i.e., the medical evidence or clinical findings on which the opinion is based—is the most important factor in determining its credibility. *See* 20 C.F.R. § 404.1520c(a). The ALJ thus articulated why he rejected Dr. Shobande's opinion that Edward needed a cane, and his reasoning applies equally to Edward's sitting, standing, and walking restrictions.[6]

Edward sees things differently. He argues that ALJ's error warrants remand because the Commissioner bears the burden at step five of the evaluation process. Since the ALJ did not pose a hypothetical to the vocational expert that included Dr. Shobande proposed restrictions, the argument goes, there is no way of knowing whether a person with those restrictions would be able to perform work that is available the national economy. (*See* Pl. Br. 10–11.) But this argument assumes its conclusion. It *assumes* that the ALJ should have credited Dr. Shobande's opinion, which in turn would have triggered the ALJ's obligation to ask the vocational expert whether a person with those restrictions could perform other work. As Edward observes, however, an ALJ need only include in his hypothetical "all limitations supported by medical evidence in the record." (Pl. Br. 9 (quoting *Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004).) The ALJ did not find Dr. Shobande's opinion

---

[6] Edward argues that "the ALJ's rationale for rejecting *other* aspects of Dr. Shobande's opinion" could not apply to his specific rejection of Dr. Shobande's proposed standing, walking, and sitting restrictions. (Pl. Reply 2.) The Court disagrees. The ALJ's observation that Dr. Shobande failed to articulate the medical evidence on which he relied applies with equal force to the ALJ's rejection of the standing, walking, and sitting restrictions because the prompt that calls for that information applies to *both* restrictions. Thus, the ALJ's observation that Dr. Shobande's opinion about Edward's use of a cane lacked evidence bore equally on Dr. Shobande's sitting, standing, and walking restrictions.

credible (in light of Dr. Kendrick's more persuasive account), so he was not required to ask the vocational expert about it.

To Edward's credit, and as discussed, the ALJ should have explicitly articulated why he was rejecting Dr. Shobande's proposed sitting, standing, and walking restrictions. But Edward effectively asks the Court to remand his case so that the ALJ can include a sentence in his decision that he "afforded little weight to Dr. Shobande's sitting, standing, and walking restrictions in light of (1) the lack of clinical findings supporting them, (2) the opinion's internal inconsistencies, and (3) Dr. Kendrick's more persuasive opinion." The ALJ's discussion, however, was more than enough for the Court to ascertain that he rejected Dr. Shobande's opinion on those grounds. *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995) (affirming where court could "trace the path" of the ALJ's reasoning). And because the Court is "convinced that the ALJ would reach the same result on remand," *Karr*, 989 F.3d at 513, asking the ALJ to clarify this point would be a "needless formality," *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004).

## II.    The Appeals Council's Treatment of Edward's Evidence

Edward's second argument is more abstract. When the ALJ ruled against him, Edward sought review before the Appeals Council. In doing so, he offered evidence that he obtained after the ALJ issued his ruling. The Council nonetheless denied review, explaining that Edward's new evidence did not create "a reasonable probability" that the ALJ's decision would change. The Council's denial, Edward

argues, departed from the administration's regulations. For the reasons explained below, however, the Council's decision is not subject to judicial review.

### A.    Legal Framework

The Appeals Council, of course, is the Social Security Administration's internal appellate panel. *See* 20 C.F.R. § 416.1467. When an ALJ denies a claimant's application for benefits, the claimant may ask the Council to review the ALJ's decision. *See id.* But no claimant is guaranteed review (think "Supreme Court's certiorari jurisdiction"). Instead, the Council considers a list of five possible grounds in determining whether to exercise plenary review—for example, whether the ALJ appears to have abused his discretion, committed legal error, or failed to support his conclusions with substantial evidence. *See id.* § 416.1470(a)(1)–(5). One of those grounds is when the claimant submits to the Council additional evidence that was not before the ALJ at the time of his decision. *See id.* § 416.1470(a)(5). So long as the claimant demonstrates good cause for not submitting the evidence earlier, *see id.* § 416.1470(b), the Council must determine whether the evidence "is [1] new, [2] material, and [3] relates to the period on or before the date of the hearing decision, and [4] there is a reasonable probability that the additional evidence would change the outcome of the decision." *See id.* § 416.1470(a)(5). If those criteria are met, the Council "will review" the ALJ's decision. *See id.* § 416.1470(a).

### 1.    Pre-2017 Amendment

The regulation was not always this way. Prior to 2017, the first three criteria—whether the evidence submitted to the Appeals Council is new, material, and related to the relevant time period—were identical. But the fourth criterion required the

14

Appeals Council to grant review only if it found that the ALJ's opinion was "contrary to the weight of the evidence," in light of the newly submitted evidence.[7] So the old regulation framed the fourth criterion in terms of evidentiary balancing, while the new regulation frames it as a probabilistic inquiry into the evidence's likely impact on the decision. *See* 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5).[8]

This distinction matters. The old regulation's explicit reference to evidentiary balancing defined the contours of judicial review of Council action. In *Eads v. Secretary of Department of Health & Human Services*, the Seventh Circuit explained that review of Council action is "limited" because, for the most part, "the decision to refuse to review the administrative law judge's decision is discretionary." 983 F.2d 815, 817 (7th Cir. 1993). The narrow exception to that rule, *Eads* says, is when "the refusal rests on a mistake of law." *Id.* An example of legal mistake, the court explained, can be found where the Appeals Council rules that newly submitted evidence is "not material to the disability determination." *Id.* (citing *Nelson v. Bowen*, 855 F.2d 503, 506–08(7th Cir. 1988)). The Seventh circuit again confronted the scope of the Council's discretion—and, hence, judicial review of its legal error—in *Perkins v. Chater*, 107 F.3d 1290 (7th Cir. 1997). *Perkins* recognized the obvious difficulty in determining whether the Council has made a reviewable legal judgment or a nonreviewable discretionary determination. *See id.* at 1294. Although *Perkins* did not announce a concrete legal rule, it interpreted the old regulation as requiring two

---

[7] *Ensuring Program Uniformity at the Hearing and Appeals Council Levels of the Administrative Review Process*, 81 FR 909870-01, 2016 WL 7242991, at *90991 (Dec. 16, 2016).
[8] These two regulations are in all respects identical, the only difference being that Part 404 of Title 20 concerns disability insurance, while Part 416 concerns supplemental security income.

15

discrete steps. *See id.* First, the Council must "decide whether the submission [of new evidence] is really 'new' and 'material.'" *Id.* "If it is, the Council must proceed . . . to evaluate the entire record including that new and material evidence" to determine whether the ALJ's "action appears to be contrary to the weight of the evidence." *Id.* Ultimately, *Perkins* found the debate "beside the point" because it could resolve the case on alternative grounds. *Id.*

The most recent formulation of judicial review of Council action came in *Stepp v. Colvin*, 795 F.3d 711, 722 (7th Cir. 2015). *Stepp* reaffirmed that judicial review is available only when the Council has made a legal error. *Id.* at 722. And as applied to newly submitted evidence in particular, *Stepp* grounded the scope of judicial review in *Perkins's* two-step interpretation. *See id.* (explaining that the availability of judicial review depends "on the grounds on which the Council declined" to review the ALJ's decision). To that end, if the Council determines at step one that the newly submitted evidence was not "new and material," courts may review that conclusion "for legal error." *Id.* But if the Council, having determined that the evidence *was* new and material, proceeds to step two and denies review anyway "based on its conclusion that the record—as supplemented—does not demonstrate that the ALJ's decision was 'contrary to the weight of the evidence,'" judicial review is unavailable. *Id.* (quoting *Perkins*, 107 F.3d at 1294). *Stepp* therefore holds that, when the Council declines review despite having received new evidence from the claimant, a court's jurisdiction to review the denial turns on what the Council did with the evidence: Did it make a threshold legal judgment about the nature of the evidence? Or did it engage in a

16

factual examination of the new evidence in light of the entire record and the ALJ's opinion? The legal judgment is reviewable; the factual examination is not.

### 2.     Post-2017 Amendment

The *Perkins-Stepp* line of cases, however, all preceded a 2017 amendment to the regulation that details how the Appeals Council treats new evidence. Again, the first step—whether the evidence is new, material, and related to the relevant time period—remained the same. But the second step changed: The old regulation framed step two in terms of evidentiary balancing, while the new regulation instructs the appeals Council to determine whether "there is a reasonable probability that the additional evidence would change the outcome of the decision." *See* 20 C.F.R. § 416.1470(a)(5).

In a vacuum, the amendment is far from groundbreaking. But it becomes problematic in light of how *Stepp* defined the term "material" under the old regulation. Indeed, *Stepp* explained that evidence is material "if it creates a 'reasonable probability that the Commissioner would have reached a different conclusion had the evidence been considered.'" 795 F.3d at 725 (quoting *Perkins*, 107 F.3d at 1296.) A closer look at *Perkins*, however, reveals that it employed that definition in discussing the meaning of "material" within the context of 42 U.S.C. § 405(g), expressly *contrasting it* with the definition of "material" in the context of Appeals Council review: "For sentence six [of § 405(g)] purposes (*as opposed to Appeals Council review, for example*), 'materiality' means that there is a 'reasonable probability' that the Commissioner would have reached a different conclusion had the

17

evidence been considered." *Perkins*, 107 F.3d at 1296 (emphasis added). Perkins thus *distinguishes* evidence that is "material" under § 405(g) from evidence that is "material" under the Appeals Council regulations. But *Stepp* overlooked that distinction: "We have found evidence to be 'material' *under § 404.970(b)* if it creates a 'reasonable probability that the Commissioner would have reached a different conclusion had the evidence been considered.'" 795 F.3d at 725 (quoting *Perkins* 107 F.3d at 1296). Yet *Perkins* made clear  that "material," as used in § 405(g), carries a different meaning than "material" as used in 20 C.F.R. § 404.970(b).

In any event, some courts have observed that *Stepp*'s distinction—i.e., the Council's materiality determinations are reviewable but its evidentiary balancing is not—is hard to square with this amendment. That is because the phrase "reasonable probability that the outcome would change" is precisely how *Stepp* defined the word "material." *Stepp*, 795 F.3d at 725 (quoting *Perkins*, 107 F.3d at 1296). Again, the new regulation says that the Council will grant review if the new evidence is, among other things, (1) material and (2) likely to change the outcome. But if "material" simply means "likely to change the outcome," as *Stepp* teaches, the regulation is "duplicative." *Teresa F. v. Saul*, No. 18-cv-1967, 2019 WL 2949910, at *8 (S.D. Ind. July 9, 2019). Assuming that the amendment incorporates the Seventh Circuit's definition of material, then, the *Perkins-Stepp* distinction would be "unworkable" because steps one and two would collapse—that is, the "materiality" inquiry (the legal judgment) and the "reasonably probability" inquiry (the factual examination) would be identical. *Id.* at *9; *see also id.* ("As applied, there is no substantive difference

between those separate requirements."). And if the two inquiries are the same, the availability of judicial review cannot depend on which of them the Appeals Council undertook.

To frame the issue in more concrete terms, imagine the following scenario. A claimant applies for benefits and is found not disabled by an ALJ. The claimant seeks review with the Appeals Council and submits new evidence. The Appeals Council denies review, explaining that the new evidence "did not show a reasonable probability that it would change the outcome of the decision." Does that mean the Council found the evidence immaterial? Or does it mean that the Council, having found the evidence material, concluded that it would not change the outcome in light of the record as a whole? Perhaps both?

### 3.    This Court's Interpretation

Fortunately, the problem is avoidable. That is because it rests on the assumption (made by Edward and some district courts) that the amendment's purpose was to incorporate the Seventh Circuit's definition of "material." *See, e.g.*, *Mary C. v. O'Malley*, No. 20-cv-3861, 2024 WL 1214754, at *5 (N.D. Ill. Mar. 21, 2024); *Teresa*, 2019 WL 2949910, at *8. For two reasons, this assumption is unwarranted: (1) it is not a sound interpretation of the regulation's text, and (2) it is undermined by the administration's internal guidance.

First, the regulation demonstrates that the materiality of evidence and its likely effect on the outcome are separate requirements. As stated, the regulation requires the Appeals Council to determine whether the evidence "is new, material,

19

and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 416.1470(a)(5). True, courts generally presume that statutes and regulations are enacted by those who are "aware of relevant judicial precedent." *Merck & Co. v. Reynolds*, 559 U.S. 633, 648 (2010).[9] So perhaps the administration knew of *Stepp* when it amended the regulation. But applying that presumption here would run headlong into the "cardinal principal" that courts should "give effect, if possible, to every clause and word of a statute." *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (citations omitted). And "[t]he same basic rules that apply to statutory interpretation apply to regulatory interpretation." *Bria Health Servs., LLC v. Eagleson*, 950 F.3d 378, 382 (7th Cir. 2020). If the last phrase of 20 C.F.R. § 416.1470(a)(5) (the "reasonable probability" clause) is to mean anything at all, it can only be read as imposing some requirement other than that the evidence be material. This reading also comports with another "basic principle of statutory construction": that different words in the same statute be given different meanings. *Lindsey v. Tacoma-Pierce Cnty. Health Dep't*, 195 F.3d 1065, 1074 (9th Cir. 1999); *cf. Servotronics, Inc. v. Rolls-Royce PLC*, 975 F.3d 689, 694–95 (7th Cir. 2020) ("Identical words or phrases used in different parts of the same statute . . . are presumed to have

---

[9] This presumption, of course, carries less force when the "relevant judicial precedent" is circuit authority, rather than Supreme Court precedent. *Cf. Learning Res., Inc. v. Trump*, 24-1287, slip op. at 17–18 (U.S. Feb. 20, 2026) (explaining that definitions contained in a "single, expressly limited opinion from a specialized intermediate appellate court" does not establish that the term's meaning is "well-settled."). *Reynolds*, 559 U.S. at 659 (Scalia, J., concurring) ("[A]ssuming that Congress intended to incorporate the Circuits' views . . . requires the . . . unrealistic assumption that a majority of each House knew of and agreed with the Courts of Appeals' opinions . . . .").

the same meaning."). By employing both the word "material" and the reasonable probability clause, the regulation contemplates two separate requirements.

Likewise, interpreting "material" and the reasonable probability clause to mean different things accords with how those terms are generally used. "Material," of course, means "[h]aving some logical connection with the consequential facts." *Material, Black's Law Dictionary* (12th ed. 2024). Evidence is thus material when it is relevant in light of the substantive law under which the evidence is analyzed. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). But just because evidence is material does not mean it is likely *dispositive*. *See Dispositive Fact, Black's Law Dictionary* (12th ed. 2024). Under Federal Rule of Civil Procedure 56, for example, a "material" fact is one "that might affect the outcome of the suit under the governing law." *See Anderson*, 477 U.S. at 248. But evidence that *might affect* the outcome is not the same as evidence that will *likely change* the outcome. For that reason, the universe of material evidence in a given case encompasses—but is greater than—the universe of evidence likely to change the outcome.

The question whether evidence has a "reasonable probability to change the outcome" is thus a distinct—and more searching—inquiry. It asks whether, in light of the record as a whole and the ALJ's rationale, the evidence is so consequential (or "so material") that it is likely to change the result. And one could easily imagine a situation where evidence is "material" but not likely to change the outcome of the ALJ's decision. Indeed, *Perkins* itself proves the point. There, the ALJ found the claimant could perform light work. 107 F.3d at 1292. The claimant then submitted to

the Appeals Council new evidence in the form of an outside medical opinion solicited by the claimant's attorney. *Id.* The Council found that the evidence was new and material but, "upon its consideration of the entire record, the Council concluded that there was nothing before it that undermined the ALJ's earlier decision." *Id.* at 1294. In other words, the evidence was simultaneously "material" and not likely to change the ALJ's conclusion.

Edward resists this interpretation. He maintains that the amendment simply aimed "to codify the Seventh Circuit's definition of 'material' under the old regulation." (Pl. Reply 6.) But the Social Security Administration knows full well how to define terms, and had it wanted to amend 20 C.F.R. § 416.1470(a)(5) to define "material," it could have easily done so. *See, e.g.*, *id.* § 404.1505(a) (defining "disability"). It is perplexing that the administration would attempt to define a term by enacting a series of four words and phrases, insert the defined term as the second item in that series, and then include the definition as the fourth and final item in the series (with no indication whatsoever that it relates back to the term supposedly being defined). Simply put, nothing about the regulation's text suggests that the amended language operates as a definition of the word "material."

The second reason not to collapse the materiality question and the reasonable probability clause is because the administration's internal guidance treats them separately. As the Commissioner observes, the administration's Hearings Appeals, and Litigation Manual (HALLEX) was revised after the 2017 amendment to the

Appeals Council regulations.[10] It now provides that "evidence is material if it is relevant, i.e., involves or is directly related to issues adjudicated by the ALJ." HALLEX 1–3–3–6(B)(2). As for the reasonable probability clause, it provides that the Appeals Council "will evaluate the entire record along with the additional evidence to determine whether there is a reasonable probability that the additional evidence will change the outcome of the decision." *Id.* at (B)(3). The HALLEX thus reinforces the conclusion that materiality is a threshold legal determination about whether the evidence is relevant in some broad sense. The reasonable probability clause, by contrast, requires a more thorough inquiry into the record and the ALJ's rationale to predict the likelihood that the evidence would alter the outcome.

In short, the amended regulation demonstrates that the question whether newly submitted evidence is material is distinct from whether it is likely to change the outcome. And keeping the two inquiries separate has the added bonus of salvaging Seventh Circuit precedent.[11] Again, *Stepp* incorporated *Perkins*'s two-step framework, distinguishing the legal question (whether evidence is qualifying) from the factual inquiry (how the evidence stacks up against the record as a whole). The legal question is reviewable, but the factual inquiry is not. On this Court's

---

[10] To be sure, "HALLEX is strictly an internal guidance tool, providing policy and procedural guidelines to ALJs and other staff members. As such, it does not prescribe substantive rules and therefore does not carry the force and effect of law." *Moore v. Apfel*, 216 F.3d 864, 868 (9th Cir. 2000). So the Court does not consider the HALLEX binding, or even authoritative, on the scope of judicial review. But the manual is probative of how the administration interprets the text of the amended regulation. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (explaining that interpretations contained in agency manuals are "entitled to respect").

[11] At least insofar as the legal judgment vs. factual examination distinction is concerned. As discussed, *Stepp*'s definition of material would not survive under the new regulations because it would make the regulation redundant.

interpretation, the Council's determination that the evidence is not material is reviewable, but its determination that the evidence does not create a reasonable probability of changing the outcome is not.[12]

### B.    The Appeals Council's Action Here

The discussion above largely resolves this case. This Court's jurisdiction turns on how the Council treated Edward's newly submitted evidence. Did the Council find that it was immaterial? Or did the Council, having found that it *was* material, weigh the evidence against the record and conclude that it would not have changed the outcome? In a letter dated March 15, 2024, the Council told Edward that it "found no reason . . . to assume jurisdiction" to review the ALJ's decision. (R. at 1496.) And with regard to Edward's newly submitted evidence in particular, the Council explained:

> [Edward] submitted medical evidence of record from Unity Point Health, dated from July 23, 2021 to April 14, 2022 (30 pages) and from Illinois Center for Pain and Rehab, dated from July 22, 2021 to April 7, 2022 (35 pages). *We find this evidence does not show a reasonable probability that it would change the outcome of the decision.* We did not exhibit this evidence.

(R. at 1497 (emphasis added).) Both Edward and the Commissioner aim their sights on the italicized language. In Edward's view, this language is "ambiguous," so the Court should interpret it to mean that the Council found Edward's evidence immaterial. (Pl. Br. 11–13.) Because that would be a legal conclusion under *Stepp*, the argument goes, this Court has jurisdiction to review it for legal error.

---

[12] Edward's reply brief appears to concede as much: "The Government does not argue that the new regulation changed" *Stepp*'s distinction between the legal judgment and the evidentiary balancing. (Pl. Reply 5.) It follows that materiality must be distinct from likelihood to change the outcome—otherwise, the two inquiries would be redundant, and the *Stepp-Perkins* line of precedent inapposite.

The Court disagrees. In light of the Court's interpretation of the amended regulation, there is nothing ambiguous about the Council's denial letter. Under the regulation (as amended), new evidence must satisfy four criteria before the Council will grant review. A denial based on the first three criteria—i.e., because the evidence is not new, not material, or does not relate to the relevant time period—are legal judgments reviewable for legal error. The fourth criterion, however, requires the Council to go beyond mere relevance and weigh the evidence against the record as a whole to determine whether it is likely to affect the outcome; this "discretionary weighing" of the evidence is not subject to judicial review. *Mary C.*, 2024 WL 1214754, at *4. The Council here did not say that the evidence did not relate to the relevant time period; it did not say that the evidence was not new; and it did not say that the evidence was not material. Instead, it unequivocally denied review based on the fourth criterion. Under *Stepp*, that factual examination is discretionary and unreviewable. 795 F.3d at 722; *see also Barbara H. v. Saul,* No. 19-cv-50011, 2020 WL 3469163, at *6 (N.D. Ill. June 25, 2020) (concluding identical language demonstrated the Council made "a discretionary determination about the weighing of the evidence").

Edward resists this conclusion in three ways. First, he argues that the Council's denial was "boilerplate," making it difficult to tell whether the Council thoroughly examined his evidence in light of the whole record. (Pl. Br. 12 (quoting *Stepp*, 795 F.3d at 725).) For his part, the *Stepp-Perkins* line of cases suggests that courts should assess the degree to which the Council discussed the evidence in its

denial letter. The more the Council talked about the evidence, the thinking goes, the more likely it engaged in a factual examination of the record. *Compare Perkins*, 107 F.3d at 1294 (explaining that the Council's letter "devotes a paragraph" to the new evidence), *with Stepp*, 795 F.3d at 722 (explaining that the Council's letter "made no mention whatsoever" of the new evidence). But *Stepp* and *Perkins* both confronted language in the Council's denial letter stating that the new evidence "d[id] not provide a basis for changing the [ALJ]'s decision." *Stepp*, 795 F.3d at 717; *see also Perkins*, 107 F.3d at 1292 (same); *Farrell v. Astrue*, 629 F.3d 767, 771 (7th Cir. 2012) (analyzing the same language and noting that it is "not as clear as it might be"). That language is truly ambiguous: It gives no indication whether the Council rejected the evidence as not material, or instead whether the Council thoroughly weighed the evidence and denied review anyway. Accordingly, *Stepp*, *Perkins*, and *Farrell* evaluated the degree to which the Council discussed the evidence as a *proxy* for determining why the Council denied review. *Perkins* found enough discussion of the evidence to deny review; *Stepp* and *Farrell* did not. Here, by contrast, the Council keyed the language in its denial letter to the text of the amended regulation. The Court can therefore be certain why the Council denied review—no guesswork is needed.

Second, Edward argues that judicial review here is "consistent with the general principal of judicial review that 'neither the court nor the Commissioner's lawyers may fill the gaps of an ambiguous decision.'" (Pl. Br. 12 (quoting *Musonera v. Saul*, 410 F. Supp. 3d 1055, 1062 (E.D. Wis. 2019).) That is true as far as it goes. But again,

the Council's reason for denying review was clear: Edward's new evidence was unlikely to change the outcome. And there is no requirement that the Council issue a lengthy decision explaining why it does *not* intend to review the ALJ's decision. *See Stepp*, 795 F.3d at 725 n.7 ("[W]e have held that the Appeals Council may deny review without articulating its reasoning."); *cf. Damato v. Sullivan*, 945 F.2d 982, 989 n.6 (7th Cir. 1991) ("[T]he Appeals Council *should* articulate its reasoning when denying the request. Congress might consider requiring such articulation." (emphasis added).)

Third, Edward suggests that the Council's denial is reviewable because his evidence is so obviously material that reviewing the Council's decision would not place this court "in the place of front-line fact-finder." (Pl. Br. 13 (quoting *Musonera*, 410 F. Supp. 3d at 1063).) In other words, only a cursory review of Edward's new evidence is necessary to discover that the Appeals Council erred. It strikes the Court as odd that the availability of judicial review would turn on how difficult that review may be. Perhaps in *this* case a review of the Council's action would not require a rigorous examination of the evidence. But in another case it may. The difficulty of the review (or lack thereof) provides no principled basis on which to grant or deny review in the first place, not least because it would require courts to review the Council's denial to determine whether the Court is authorized to review the Council's denial. Edward also provides no reason why his observation should not cut the other way: If his evidence is material on its face, does that not support the inference that the Appeals Council found it to be so?

27

In his reply, Edward urges the Court to adopt the reasoning of other district courts who, confronted with the same language in the Council's denial, granted judicial review. (*See* Pl. Reply 5.) The Court recognizes that the issue is far from straightforward, and reasonable jurists can and do disagree on how *Stepp* and *Perkins* apply to the amended regulation. But by and large, the courts on the other side of the divide assumed that the amended regulation merely incorporated the Seventh Circuit's definition of "material." *See, e.g.*, *Teresa F.*, 2019 WL 2949910, at *9; *Mary C.*, 2024 WL 1214754, at *5; *Musonera*, 410 F. Supp. 3d at 1060. Still other courts grant judicial review upon finding that the "reasonable probability" language in the Council's denial letters is ambiguous. *See, e.g.*, *Davis v. Comm'r of Soc. Sec.*, No. 3:20-cv-303, 2021 WL 2451908, at *5 (N.D. Ind. June 16, 2021); *Tina C. v. Saul*, No. 2021 WL 1851655, at *4 (N.D. Ind. May 10, 2021). For the reasons already discussed, this Court disagrees on both counts.

In sum, the Appeals Council below denied review based on its conclusion that Edward's new evidence was not likely to change the ALJ's decision. That is a discretionary judgment under *Stepp*, so this Court cannot second guess it.

## CONCLUSION

The Commissioner's decision is AFFIRMED. The Clerk is DIRECTED to enter judgment and close this case.

*So ordered.*

Entered this 23rd day of February 2026.

s/ Ronald L. Hanna

Ronald L. Hanna
United States Magistrate Judge
